I represent the appellant Michael Kossler. I'm also here with my amicus counsel Nancy Winkleman who is sitting at the council table. I'd like to reserve three minutes and revoke. That request will be granted. The lower court in this case granted the defendant's motion for summary judgment on the basis of the fact that Mr. Kossler had been convicted of disorderly conduct thereby according to the court barring his malicious prosecution claim based upon aggregated assault charge of which Mr. Kossler was acquitted. When the lower court entered its decision it did not have the benefit of this court's decision in Johnson v. Knorr. In Johnson v. Knorr as this court may be aware, Judge Greenberg concluded that where there are multiple charges brought against an individual and the individual is acquitted on some of those charges but convicted on others, the court must in that circumstance and I quote from Johnson v. Knorr, courts need to separately analyze the charges claimed to have been maliciously prosecuted. The court went on to state that the validity for each charge comes into question as the plaintiff was subject to prosecution on each individual charge. But wasn't that a different case? Wasn't that a case that dealt with whether there was probable cause for any of the underlying counts and didn't Judge Greenberg in one of the footnotes, I think it was footnote nine in that opinion, distinguish that case from the Wright v. City of Philadelphia which had been the preceding, apparently the preceding precedent of our court? Well, Judge Greenberg does distinguish Wright v. City of Philadelphia and Wright v. City of Philadelphia is clearly distinguishable from this case. Isn't your case more like Wright? No, this case, our case falls squarely within Johnson v. Knorr. Why is that? Several reasons. First, if you look at Johnson v. Knorr, the court says that the reason we have this rule is that number one, if not to have that rule, police officers could file charges greater than what is proper with impunity. Number two, because you add an additional burden on a defendant when you add these additional charges by virtue of the fact that, for example, you have a summary offense and you had a felony charge, there's a greater burden imposed on the party or the defendant in that question to defend against the felony charges. In addition, third reason was we don't want to insulate police officers from fabricated charges. Court specifically says in Knorr that we don't think Wright stands for the proposition that police officers should be insulated from fabricated charges. But here's the difference between Wright and our case. Number one, Wright included all felonies. The criminal trespass charge was a felony. The burglary charge was a felony. The theft charge was a felony. Here we have a summary offense and a felony. In Wright, there was no dispute as to the facts. Facts were exactly as they were reported to the police. Third thing in Wright that distinguishes it. The only involvement that the police had in that case was to prepare an affidavit of probable cause based upon the facts received from the third party that were not in dispute in Wright. And which was then approved by the district attorney. And then the arrest took place. The involvement of the police in Wright ended at that point. There was no dispute. But Johnson was different. Johnson's conduct, Johnson's terroristic threats occurred in the office, in the parole office here in Philadelphia. Correct. And the arrest powers of a parole agent for conduct that may not necessarily be a per se parole violation may be different than the powers of a police officer. And what happened in Johnson is they then took Johnson down to the precinct and told the police officers what happened. And a police officer, I believe his name was Dove, filed the charges against Johnson. And I read it. Judge Greenberg's opinion is saying it was that conveyance of that fabricated information by Knorr, which was a malicious prosecution. Right. What the court was saying there was that separate and apart from the incident, there was information conveyed by the police officer that was fabricated. That is precisely what we have here. We have the arrest that we then have Crisanti who goes to a preliminary hearing and alleges facts that were not true. The court below Judge McVeary recognized that there were two distinct versions. Mr. Costa's version was I simply waved his hand away. And Judge McVeary acknowledges that. Crisanti's version, which is on this record, has to be in essence disregarded. You have to accept our summary judgment record. His version was that Mr. Costler charged at him, that Mr. Costler was coming at him and that he, Crisanti, had to put his hand up to block him. That Costler then grabbed his hand and bent it back, causing injury. All of that is not true. So we have the precisely exact situation that occurred in Johnson versus Knorr. And I would add, Judge, Johnson versus Knorr rests, cites Passer versus Dougherty as the precedent upon which it relies. The facts in Passer versus Dougherty are identical to our facts. In that case, the plaintiff was at a... Let me ask you one other question about Johnson versus Knorr. I mean, you've made your case on Johnson versus Knorr and done it well. But isn't that a different case? You're arguing in this case that there was a favorable termination. Correct. That's your position. But Johnson v. Knorr was a probable cause case. Sure. And so how does Johnson v. Knorr really help you when you didn't raise that in the district court? Well, we did. You now have Johnson v. Knorr, but you still didn't raise a probable cause issue in the district court. Well, the probable cause issue wasn't decided by the district court. Judge McVeary has never... Of course we did. We raised the issue that there was no probable cause for aggravated assault. That's essential to our case. It's in our complaint. It's clearly raised. Judge McVeary never analyzed whether there was probable cause for aggravated assault. So that has been raised. In addition, I would point out that if you follow the logic of Johnson versus Knorr, which is that you analyze each charge separately, then applying that standard, you analyze the aggravated assault charge separately. May I interrupt? This is Judge Aldis, sir. Yes, Judge Aldis. Are you familiar with the Genetka case from the Second Circuit? Absolutely. That seems to... Pardon? I'm absolutely familiar with that case. Isn't that... Doesn't that count against you? No. Actually, two reasons. Genetka v. Dade supports our position. Number one, that was a favorable termination case. That wasn't a probable cause case. Right. Genetka was then followed by Passer v. Daugherty, which was then followed by this court. Well, Genetka, there we had the same minor charge of disorderly conduct, did we not? Actually, in Passer v. Daugherty, we had the same minor charge as in this case. And in Passer v. Daugherty, the court said, and this is a quote actually from Genetka as well, as disorderly conduct is a lesser charge than resisting arrest and assaulting an officer, we should not allow the finding of probable cause on this charge to foreclose the malicious prosecution claim on charges requiring different and more culpable behavior. That language comes both from Genetka and from Passer v. Daugherty. Genetka was not a probable cause case. That was a favorable termination case. I would also point out to Judge Althusser that under the restatement of torts, an equivalent is considered a favorable termination under 660, comment C, I believe it is. It's referenced in our brief. In Genetka v. Dade, the court there applied the acquittal standard to the separate charges. So in that regard, Genetka v. Dade supports us. Also, Dunwoody v. Gavin, which is the Third Circuit's decision, indicates that acquittal is a favorable termination. So if you apply the separate analysis standard, we have an acquittal, we have a favorable termination. Okay, you'll agree that in order for you to prevail, you have to show that there is a favorable termination, at least on the charges. Otherwise, federal issues come into play, and that's why we have the Heck v. Humphrey rule in the first place, federalism to avoid the federalism issues of undoing a conviction through in 1983. Now, aren't there significant similarities between a conviction for disorderly conduct and a conviction of aggravated assault? No, there are not. Aggravated assault, as was charged in this case, was charged as a felony A2, which means that Mr. Costler had to intend or attempt to inflict serious bodily harm. I thought he was charged under A3. He was charged under A2. If you look at the incident report, excuse me, I'll get to the page here. If you look at the if you look at 259A, Judge, on the incident and criminal complaint, Crisanti indicates that the charges against Costler, aggravated assault 2702 A2, at the preliminary hearing, after he testified at the preliminary hearing, the assistant DA at that point agreed. First off, the A2 charge was dismissed at the preliminary hearing and then was allowed to go forward as an A3 simple assault. So he was charged as an A2, serious bodily harm, and that charge was dismissed. But then he was acquitted by Judge Colville of A3. That is correct. And you acknowledge that in your brief. I do. Okay, now is that the question of what, isn't that the question of which is a favorable termination? Well, there's two favorable terminations here. First is he's charged with a felony class one, which is a favorable termination when he was dismissed at the preliminary hearing. That's a law. There's a second favorable termination when he's acquitted of the A3. There is no... I thought he wasn't acquitted of disorderly conduct. Disorderly conduct is an entirely different offense than simple assault. And the Superior Court of Pennsylvania in Commonwealth v. Wordelette made that crystal clear. You can't take a case that is essentially a summary offense and blow it out of proportion. And this is Johnson v. Moore. When you take these minor offenses, keeping in mind that in Pennsylvania, a summary offense is not even admissible in a civil action. These charges are considered to be de minimis. And we should not allow a summary offense conviction that the state believes to be aggravated assault is a serious offense. Mr. Costler had never been arrested before in his life, never charged. This is an upstanding good citizen who had to face the potential of going to jail for a long time. He could have lost his job. He put all that risk because he didn't do this. And this court should not permit false charges to go forward without some recourse. I would point out to this court, and I know I'm running out of time, but I wanted just to read this very quick quote that this court stated in Hilferty v. Shipman. The right to file a malicious prosecution claim is a deeply important one. Persons who are unjustly prosecuted may suffer emotional pain, permanent damage to their reputation, and real financial loss. It is in the public interest to ensure that persons against whom prosecutions are maliciously Such actions protect those persons wrongfully prosecuted and deter malicious prosecution. And this is a case where I believe the court has to stand up and say, you can't do that. It's wrong. Answer this question, Mr. O'Brien. It seems to me that aside from Mr. Costler's case here, obviously you're here advocating on his behalf, that there are some significant implications to this case for Mr. Costler and many other defendants, many other Pennsylvanians, with this decision. Because as someone who spent a few years of my career in prosecution, this is not the only case where charges have been dismissed and a fining of guilt was made on a lesser charge. It seems to me there could be a lot of judges who could express concern about police officers being sued under 1983 as a result of a fining of not guilty on the more serious charges. And doesn't that whole, doesn't a system like that potentially run the risk that more people end up going to be harmed and then helped by the decision you're asking for? Two things about that, Judge. First, this court has answered that question to some degree. This court has indicated in Johnson v. Moore, relying on the Second Circuit analysis, which, by the way, every court that has squarely addressed this issue has concluded that you should separately analyze the charges. Nobody has cited, and I'm not aware of, a single district court or state court that has squarely addressed this issue that has come to a different conclusion. And I don't believe that there's any evidence that there's going to rush into the courthouse on these kinds of claims. But more importantly, this court answered the question in Johnson v. Moore. Because in that case, the court said, look, the policy that we're concerned about is we don't want this tacking on of charges. We don't want to insulate police if there are fabrications. Now, but the court also set up guideposts, and I think they are reasonable guideposts. First thing, in order for this charge to go forward, this claim to go forward, you have to show that there was some burden imposed upon the plaintiff that would not ordinarily have existed. If you look at Wright v. City of Philadelphia, there was no burden because they're all felony charges. So I'm charged with one felony, so what if there's no probable cause for the other bond? So that's one factor. Another factor is, are the facts in dispute? What role did the police officer actually play? In Wright, the police officer is simply a conduit. I went to the victim, the victim said X happened, I came back, I wrote it down. I went to the DA, the DA said, okay, that's good, go arrest them. I go arrest them. Police officer does nothing culpable. So there's another guidepost. Third thing, is there fabrication? Is there some basis in the record to conclude that there's fabrication? And as this court alluded to in Johnson v. Moore, very clearly said, look, it may be that the facts are exactly as the police officer said, but we can't accept that. We have to accept the facts as the plaintiff has given them. So I don't think that there is a possibility that there's going to be a rush to the courthouse on these cases because it hasn't happened, number one. Number two, the court has set up the But once you meet those tests, once you meet that there's a burden imposed, once you meet the test that the police officer has provided the information, once you raise the question of fabrication, then under those circumstances, this court has answered the question and said, yes, you have that right. Well, one last question. Was Corsanti working within the scope of his employment for Donsi's when he made this arrest? Two things, but yes, in my opinion, yes. The district court, Judge McBury said the record is replete with facts that create a dispute as to that issue. He said that initially, then on his reconsideration. Well, he never varied from that. What he did say was that with respect to the police's prosecution, I'm not going to allow that to go forward. And I think that was an error because once the issue of whether this individual is an employee or under the control of Donsi's, and once you accept the premise, which I think is factually within the record, that he was authorized to use his law enforcement authority on their behalf, then you go to the restatement of agency and restatement of agency 253 and 246 very explicitly authorize this cause of action and allow the case to go forward. Okay, thank you. Thank you, Mr. O'Brien. Mr. Fitzpatrick. Good afternoon. I'm Michael Fitzpatrick. I represent the AFL-E Donsi's. I'll be arguing for 10 minutes and five minutes. Attorney Brian Campbell will be arguing on behalf of the AFL-E, the police officer, Officer Crisanti. One thing I just want to be clear, when Judge McVeary entered the partial motion for summary judgment, he entered it dismissing the false arrests, the failure to train and the failure to supervise. And those had not been challenged and have been waived. And in fact, appellant in their brief on page five of their brief concedes that they are not contesting those dismissals. So we're only here on the termination aspect of this case. And it is my contention that Judge McVeary did not err in dismissing the malicious prosecution, especially as it applies to Donsi's. The trial judge had stated that he had dismissed the malicious prosecution for multiple reasons, and we'll get into the favorable termination aspect of it. But one of the reasons he had stated it is as a matter of record, there just was nothing to indicate that Donsi was involved in this prosecution whatsoever. I refer specifically to the record and Judge McVeary's ruling that there was no evidence of the record for a reasonable fact finder to conclude that Donsi's initiated the criminal proceedings or had any involvement with the criminal proceedings. We didn't even know they were going on. But in the record itself, admissions made by the Donsi's, the Donsi's had no notice of any arrest or prosecution of Costler, the appellant. That's no facts or evidence that Officer Grisanti was acting as an employee or agent on behalf of Donsi's at the time of the arrest and prosecution. That's in the appendix 87A. Costler, the appellant, admits in his deposition that he's not aware of any facts that Donsi's was in any way involved in the prosecution of Costler, the appellant, on page 87A of the appendix. This was not a private criminal action that was filed by Donsi's. Donsi's didn't know anything about it. Costler admits that he has no facts to support allegations made in the complaint in paragraph five of the complaint that at the time of the prosecution, Officer Grisanti was acting on behalf of Donsi's. That's page 92A of the record. Costler admits in his deposition that Donsi's was just a private business, not a state agency, and that Costler, in the deposition of Officer Grisanti, the police officer, he testified that Donsi's never asked the officer to arrest or prosecute anyone and that they would do that on their own. That is, the officer would do that on Donsi's own and that Donsi's had no supervisory responsibility. Mr. Fitzpatrick, I think, if you could help me out on this, that we have the Pennsylvania cases suggesting a theory of respondeat superior is available in malicious prosecution cases. Forget about the 1983 cases. Now, the police officer was on the scene because he was, if not an employee, an independent contractor of Donsi's. I would like you to argue why this officer would not have been on the premises were he not tied up with Donsi. Oh, absolutely, Your Honor. There's no doubt that Officer Grisanti was present in front of Donsi's to act as a deterrent that is set forth in the record and his role was to last until Donsi's was open at 2 o'clock. This altercation... And he got paid. He got paid. This was in addition to his salary as a police officer of the city of Pittsburgh. Donsi was paying him, okay? Yes, Your Honor. You're absolutely correct. No, pardon me. All right. Okay. Go forward, please. He was being paid to serve as a visible deterrent in front of Donsi's while Donsi's was operating. In addition, though, city police officers, as part of working off-duty assignments, still have an obligation to perform and, in fact, they see a crime going on and leave their secondary employment. This situation occurred at 2.20 a.m. when Donsi's was closed in a public parking lot owned by Elko, which is a public parking lot for numerous businesses and is not a public parking lot that is owned by Donsi's. So at the time of the incident, he was not an officer. Unfortunately, we already have requests for admissions and the depositions of the officer and of the appellant, Costler, in which he states he has no facts to support those contentions. Now, that's stretching the facts a bit, though, to say that's not Donsi's parking lot, isn't it? No, it's Elko's parking lot. We don't have a parking lot. Yeah, but if people are going to go to Don... If people... The parking lot that people are going to use to go to Donsi's, the most convenient parking lot is right there. Donsi's is down by the river. You then go up a flight of stairs into this big public parking lot. And this services a number of different areas in the Strip District, Your Honor. I parked in there and gone biking along the river. I didn't go... Not at 11 p.m., though. Right about that. Okay, from 11 to 2, you didn't bike there. You're exactly right. But, I mean, it's stretching it to say this wasn't Donsi's parking lot. No, it wasn't on our parking lot. We own the parking lot. If it wasn't the parking lot, it's stretching it to say it wasn't the parking lot being used by Donsi's customers. I imagine some customers were parked there, as well as most businesses in that area. So, in addition to the record itself not showing any facts that Donsi's had any involvement in this, I do want to talk a little bit and follow up in regards to the case cited in the reply brief of Johnson v. Moore. And I do want to indicate that that case is different than our case. In that case, they were talking about a fabrication of a baseless charge. That's not our case. And in that case, in the Johnson case, it dealt with charges that were brought and didn't even pass at the preliminary level. In our case, the charges are brought before the magistrate. They're held over. The charges are then prosecuted by the district attorney's office and then tried before Judge Colville, who specifically finds guilty Costler for disorderly conduct and specifically finds that Officer Versanti was acting reasonable. So, we have really different facts in Johnson v. Moore than we really do in this particular case. We're dealing, one, where there's a dispute of fact whether there was any probable cause because at the preliminary level in Johnson, the charges are dismissed. And in our case, we're not having a probable cause issue. The charges did pass at the preliminary level. They were prosecuted by the district attorney. In fact, Costler was guilty of disorderly conduct. That's sort of though, right? I mean, your opponent made clear, I think the record's clear, that at the preliminary stage, the charge was reduced. Yes. And what went forward at trial was different than what was presented at the preliminary hearing. Yeah. At the magistrate level, I believe the district attorney's office altered the assault, I don't know if it was Section 1 or Section 2, but at the magistrate level itself, the district attorney did alter the assault charge. Yes, you're correct, Your Honor. But what Costler is convicted of is really the same element of that assault. Well, but it's not, if we compare what he was originally charged with, the A2 felony, and what he was convicted of, those are quite different elements. They seem to me to be different in severity. The elements are different. One's a summary offense, one's a felony. There's some pretty stark differences, are there not? Oh, no doubt about that. I totally agree with that, Your Honor. But the facts, the transaction, what it's based on is coming from the same thing. Both are involving fighting, making physical contact with a police officer. Well, that's a good point, but I think that raises, I think, a vexing question, which is if the police officer's version of the facts is radically different than the actor's version of the facts, and we were to go back to Wright and say that this case is not like Johnson, aren't we opening the door wide open to a complainant filling out the affidavit of probable cause to say a variety of things, and all of which would be insulated from Sir Wright's case challenge, even if those things that were averred were patently false? Well, you have to take a look at the, this isn't like your lumping murder with jaywalking.  It's not a situation where you can say, well, because he's guilty of jaywalking, I'm also going to charge him of murder. In that case, you would have the magistrate level be able to screen it out. The district attorneys would be able to screen it out. But you're talking there, you're talking different instances. Here, what he's convicted of is for fighting the decision. Well, it's a summary offense, though. It's, I mean, isn't there, and I guess what I'm asking, Counselor, is if we accept your there a risk that there'll be a temptation on the part of the charging officer to always charge up a felony at the same time as a summary offense, and that would almost force a plea deal that the putative defendant would almost be forced to plead guilty to a summary offense in exchange for the felony going away, rather than if I'm charged with a summary offense, and that's what I'm facing, then maybe I go to trial. There was probable cause for what he was charged with. In fact, there's medical evidence that he injured the police officer's hand. There was probable cause. I think Judge Colville just cut him a break in reducing the severity of it. But for that transaction, what he did, there certainly was probable cause. Well, that might mean that you win a trial, though. But we've got a pretty serious difference of opinion on the summary judgment record. Well, they're not challenging the false arrest. We're only here for the malicious prosecution. If you win, you're saying that there was probable cause to arrest Costler for something. Yes. You didn't argue there was probable cause below. And as to Donzie's, I don't believe in your brief that you argued there was probable cause. I think I just did that. A point we need to show the four elements for malicious prosecution, one would be concerning probable cause. But I thought you just argued the first two elements, see, that the defendant initiated the criminal proceeding and the criminal proceedings ended in his favor. I thought you argued that those two elements didn't exist in this case. I think all four elements. Actually, it means more than that. But the four elements for malicious prosecution, that is, Donzie's initiated the proceeding without probable cause maliciously and that there was a payable determination. I thought in the brief I had addressed all four of those, Your Honor. All right. Do you have anything else to add, Mr. Fitzpatrick? I have nothing, Your Honor. Okay. Mr. Campbell. May it please the court. My name is Brian Campbell and I'm representing Steve Crisani. I think one way to analyze this to show why Judge McCrary was right and what he decided is this. When you look at the disorderly conduct statute, under the facts of this case, what Judge Coteville basically found was that the plaintiff, Mr. Costler, engaged in fighting with the police officer with intent to do harm. Now that's summary disorderly conduct. And under the statute, that's the only scenario that fits the facts of this case. The difference between summary disorderly conduct and misdemeanor three is whether there's just an intent to do harm or there's an intent to do substantial harm. So in this case, on the record of the criminal case, the court can't deny that Mr. Costler was found guilty of fighting with the officer with an intent to do harm. I think what Mr. O'Brien wants to argue is because he is the plaintiff and we filed the motion for summary judgment, you have to take the facts as Mr. Costler stated them. Well, if you take the facts as he stated them, he's saying he wasn't fighting with the officer. He's saying he didn't attempt to inflict any harm on the officer. The most he said he did, given the scenario as he saw it, was that he's standing there, the officer comes over, puts a finger to his nose, actually touches him, and all he does is sort of brush the finger away the same way somebody would swat away a fly. And that's basically what he's going to contend when he goes into court to try this. But that's totally inconsistent with what Judge Coteville found him guilty of. In other words, if you take Mr. Costler's version of the facts, he did nothing wrong. He didn't commit any crime, whether it be aggravated assault and battery or it be disorderly conduct. Now, how do we know that? Judge Coteville didn't make the specific findings of facts. You're asking us to infer that, correct? Well, it's the only thing he could have found if you look at the disorderly conduct statutes, because under Section 1, disorderly conduct can be fighting with intent to do harm. When you look at the other sections of disorderly conduct, they don't deal with any type of conduct that's involved in this particular case. See, I think one of the things that Judge Fisher mentioned, and I think it's true here, when that charge was amended by the DA, and I think this is important consideration, too, as a matter of policy. The first time the district attorney sees this case is at the preliminary hearing. I think everybody knows who's experienced in the criminal law. At that stage, a lot of charges get added, a lot of charges get dropped. If we're going to set a precedent to say that that police officer is bound by whatever he may have entered on his police report at the time of his arrest, and what he processes is through the warrant office, and if that's changed later, that's some proof that he's guilty of malicious prosecution. I think you're really opening up Pandora's box. I think the key thing here is the DA amended the charge to A3, which meant that there was an attempt, or actually was caused, bodily injury to the officer in the course of his employment. Let me interrupt for a minute. Your adversaries aren't complaining about what the DA did. The DA's not a party here. As I understand their argument, they're complaining that your client lied when he swore out an affidavit of probable cause, and he did that with malicious intent to trump up the charges against their client. Yes, but when you look, the district attorney did not drop the charge altogether. All he did was change it from one type felony to another within the same statute. I guess I'm asking, why is it relevant what the DA did? I'm going to ask you to assume things that you clearly disagree with. Assume for a minute that Mr. Costler's story of what happened that night is true, and assume that Mr. Crisanti's story is false. As I understand your adversary, they're saying that once Mr. Crisanti put in the false charges, that malicious prosecution was complete upon those misdeeds. Isn't that what they're arguing? Yes, that's what they're arguing. And if in fact Mr. Costler had been acquitted on all the charges, he'd have a pretty good foundation to go into court and say that. But see, he wasn't. He was found guilty of disorderly conduct. And what you have to look at when he went to trial and what the judge is looking at, he's looking at the part of the aggravated assault that says there was an attempt, or in fact he did cause bodily injury, not serious, but bodily injury to a police officer during the course of the officer's performance of duties. But didn't our opinion in Johnson say we need to look at each individual charge? But why shouldn't we? Judge McVeary didn't have the benefit of Johnson in making this decision. Why should we not remand this case to Judge McVeary and simply say, revisit the motion in light of Johnson? Yeah, well, that is a possible outcome. But what I'm saying is, even if it is remanded to him or whether this court wants to decide in light of Johnson, what you cannot ignore is the implication of the finding of guilt for the disorderly conduct in relation to what that statute says. Because the expression's been used before today about taking the two butts out of the apple. What the plaintiff wants to do is say, okay, even though I was found guilty of fighting with the officer, attempting to cause harm, I want to go to trial now and say that that didn't happen at all. Well, wouldn't there be some res judicata effect or collateral estoppel, I should say? Correct. But that's an issue to hammer out regarding the production of evidence at trial. You may have some good evidentiary arguments regarding how the trial's to be conducted, but that seems to me a different analysis than the summary judgment question presented here. Well, I really don't think so in the sense that how can you say that it was favorably terminated when, in fact, the very finding by the judge in finding him guilty says that he committed criminal conduct, that he wasn't just standing there as an innocent bystander who's being assaulted by a police officer. What we're going to do, in effect, is if we go to trial, we're going to take the finding of guilt of disorderly conduct and say, well, we're just going to ignore that. We're going to ignore the fact that he was fighting and he had an intent to cause harm, and now we're going to proceed. And I don't know how you can do that. I was suggesting the opposite. I was suggesting that at trial, you would argue, assume that there's issue preclusion, collateral estoppel as to that. Mr. Campbell, isn't your problem our court's decision in Johnson v. Brown to analyze a claim like this on a charge-per-charge basis? Doesn't that complicate this case? It does to an extent, and I think down the line, and it's just from my general experience in the criminal law that, as I say, you're going to open up Pandora's box. I understand the case law where somebody may be engaged in disorderly conduct, okay? The police come on the scene. They arrest the person. They charge him with resisting arrest, something like that, and subsequently, okay, the person is convicted of the disorderly conduct, but they're acquitted of resisting arrest. Well, they're two separate entities. Here, we're dealing with one set of facts. We're not dealing with disorderly conduct here, resisting arrest over here. What's involved here is the confrontation between the officer and the plaintiff, and it's clear from the finding that the plaintiff can't go forward and contend, hey, I didn't do anything wrong. I have a right to go to a jury and say, I was completely blameless in this situation, and if you do let him go forward, that's exactly what you're doing because you're throwing out the finding by the court that he's guilty of disorderly conduct, which has to be he was fighting with the officer, so another way of saying that, I guess, is that you're saying that what your opponents are seeking is a rule of law that says you're bringing a malicious charge claim rather than a malicious prosecution claim because the prosecution is the fact that the gentleman is being brought to trial. Underneath that are a variety of charges, and that should be the prudential rule. Even if that made sense, though, we have to deal with Johnson, right? This panel has to deal with Johnson, which is why I asked you before. Would the prudent thing to do be to ask Judge McVeary to revisit his decision in light of Johnson? Okay, thank you, Mr. Campbell. Okay, thank you. Mr. O'Brien? First, I think the concerns that were expressed by Judge Hardiman about the circumstances when charges are just added on is precisely what animated the court with Johnson, number one. Number two, if Mr. Campbell is right, then you don't have Johnson versus Knorr. You don't have Postler versus Daugherty. You don't have Genetka versus Day. Postler versus Daugherty involve the exact same facts. But aren't the facts substantially different here in this case because of the fact that Mr. Postler was not acquitted of all charges, whereas Mr. Johnson was. That's true. That goes to the favorable termination issue. That's your issue. There are a lot of interesting legal issues in this case. But in order for you to win, you have to show that there's a favorable termination. Correct. And if you follow the logic... And to get to the favorable termination, aren't you stuck with the facts as Judge Colville found them? That in fact, Mr. Costler wasn't innocent of all misconduct on that evening. No, but he said... He just called it disorderly conduct as opposed to aggravated assault. He said disorderly conduct. He didn't find that there was any effort to inflict harm. He didn't find that there was any injury. But there's nothing implicit in a disorderly conduct. Mr. O'Brien, you want to ignore the sections of disorderly conduct that are similar to the elements of aggravated assault. Here's what the court said. What happened was not a misdemeanor or a felony. It's not an aggravated assault. It simply isn't. Costler was in the wrong place at the wrong time. Crisanti was upset. It got out of hand, but the charges don't fit the crime. And then the only basis for the disorderly conduct was that he hit his hand. That was it. The disorderly conduct statute is not limited to fighting. It says threatening, tumultuous, offensive. The offensive condition requirement could be getting too close to somebody. Nothing in the disorderly conduct statute talks about inflicting injury or attempting to inflict injury. That's what the aggravated assault statute says. In addition to which, Mr. Campbell's concern that we're asking someone to disregard the disorderly conduct conviction is not entirely accurate. The Pennsylvania Supreme Court said ignore the disorderly conduct conviction because it is de minimis. Because people don't take them as seriously. It's not admissible in a civil proceeding. So he can't lay that on the appellant. But again, if Johnson versus Moore is going to be the law, then the charges have to be separately analyzed. And if you separately analyze the charges in this case, the conclusion that you would reach is that there is no probable cause for a felony aggravated assault. That conclusion is inescapable. The fact that he was found guilty of disorderly conduct as a summary offense does not change that outcome. There's no finding by code bill that Mr. Costler attempted to injure this police officer, injure this police officer. This police officer in a preliminary hearing testified that he injured his right hand when in fact in his deposition he admitted his right hand was never injured. We can't allow that to happen. Let me ask two questions, Mr. Bryan. First, how can Donzie stay in this case? Your adversary argued that it's Alcoa's parking lot, et cetera. Let me grant you that that's not right. Even so, what you have left is a malicious prosecution claim. Correct. It's not a false arrest claim. Correct. Well, when Mr. Cressani sat down to fill out the affidavit of probable cause and went ahead with the charges, he no longer Donzie's agent. He's a city of Pittsburgh police officer. I don't think you can separate the chain of events. And here's what the key is in this. They hire him to use his law enforcement authority. They've admitted that as part of that, he uses force and that he has arrested people under Pennsylvania law. When someone is arrested without a warrant, that begins the initiation of the prosecution. So while he is acting as the agent of Donzie's, he initiates the criminal prosecution, which he falsely denominates and alleges is an aggravated assault felony. Now, the fact that this man has a dual employment, the fact that he has two masters of being the city of Pittsburgh police department and a private entity, doesn't change the fact that all of this stems from the fact that he was doing this on behalf of Donzie's. He went over in the first place, Judge. When you say doing this, though, I think you're putting the rabbit in the hat. Well, if he's at Donzie's getting the $100 and he tackles someone, he beats someone up, he assaults someone in the bathroom, all that, sure, he's Donzie's agent. But when he goes ahead and uses the arm of the law to fill out a criminal complaint, he's a police officer. First off, he does all of this with the badge of authority to begin with. And what the court is suggesting is that there's a line that is separated when he then actually fills out the charges. And when I'm suggesting that... I'm sorry to interrupt you, but the reason I'm suggesting that is you can't have it both ways. For 1983 action, you need state action. Correct. And when he fills out that complaint, he is a state actor. Donzie's does not have the power of the state. Well, he was a state actor from the beginning. And Judge McGurry cites the Groom case versus Safeway, where the court there concluded that Safeway was a state actor. But when you hire the authority of the state to act on your behalf, which they did, there's no dispute about that. They hired the police to have their authority. What they want is a rule that allows them to sever that authority when it's convenient for them. A police officer, when they grab somebody and arrest them, is acting as a state actor. Presumably, they're not going to do that unless they have a charge to do it. They have said, we have the police come in because we want them to take care of it. Once they come in, we step aside. So they want their authority. But in this case, they want to draw this line and say, okay, even though the police officer has to file charges, how else would you justify jumping on somebody? Let me see how far your scope of authority goes. Let's suppose that this confrontation didn't happen at the top of the steps. Correct. But as bodies moved at 2.15 a.m., it happened on Smallman Street, right outside that parking lot. The classic example, Judge. Is there any difference? Yeah, there's a big difference. And the city of Pittsburgh has a secondary employment procedure and policy. And pursuant to that, if there's a crime taking place across the street at another bar, let's say, and Grisanti gets a message, there's a fight taking place over at Joe Schmoe's. At that point, he's obligated, in his capacity as a city of Pittsburgh police officer, to go over there and take care of it. At that point, he's not acting as Donzie's agent at all. Even though he had been working for Donzie's, he has now abandoned that employment and gone and done something else. But when does it stop? Mr. Fitzpatrick says, when you stepped into the Alco parking lot, it stopped. Well, I think it would justify, you would apply your traditional standards to that. If Mr. Grisanti had been paid his $100, got in his car, was about to leave the parking lot, and as two cars come down, he sees a collision, jumps out, and arrests the guy for DUI, not Donzie's agent. I think, if you look at the facts in this case, this all had been related to a fight between Donzie's customers, where Grisanti went over to break up that fight to help them. It was incident to that, that he charged over to Costler because he felt Costler was interfering with that, and he didn't want it to happen again. I'm sorry, I have one other question. Why shouldn't we vacate and remand rather than reverse and remand? And do you need me to elaborate on that? No, I think that there's a question here, which I think, on the record, this court could answer, because the record with respect to the facts underlying the disorderly conduct and the aggravated assault and the difference between the factual assertions are clear. And that this court could conclude, as a matter of law, that given Costler's version, that there's no probable cause for aggravated assault, either A2 or A3. But I think the court could do this. On the other hand, it would be appropriate, as well, for the district court to consider that and make that determination. But I think the record is complete. Thank you. Counsel, let me help you out with the answer there. Thank you. The difference between reverse and remand and vacate and remand is that in the first case, we have made law, okay? In this case, the existing law that I've been able to find is that, are the cases in the and also in the 11th Circuit, that it's important for this case, for this court, to really come down and make a decision saying whether they are accepting the jurisprudence, the legal reasoning of those other circuits, or become the first circuit, in my research, anyhow, to go against the jurisprudence of those two circuits. And if you're going to do the form, I would prefer that you do that, Judge. Thank you, Mr. O'Brien. And we thank counsel, all of counsel, including Ms. Winkelman, who's filed the amicus brief for your excellent advocacy of a very interesting issue. And we'll take the matter under advisement, and we'll take a short recess.